UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| SHIRLEY CHILDRESS, ) | |
| ) | |
| Plaintiff, ) | Civil No. 10-18-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, ) | **& ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Shirley Childress, brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits. The Court, having reviewed the record and for the reasons set forth herein, will deny Childress's Motion for Summary Judgment [R. 11] and grant the Defendant Commissioner's Motion for Summary Judgment [R. 14].

**I.**

Before turning to the substantive issues raised by the parties' motions for summary judgment, a separate matter merits attention. The Court's Standing Scheduling Order in social security cases provides that the parties must file memoranda in support of their motions for summary judgment of no more than fifteen pages. [*See* R. 6.] Further, the plaintiff must include a statement of the legal arguments presented in a numbered list at the beginning of the memorandum, and the Court will consider only the arguments listed and will not formulate

arguments on the plaintiff's behalf. [*See id.*] Additionally, both parties must provide the Court with specific page citations to the administrative record to support their arguments. [*See id.*]

Here, Childress, by counsel, requested and was granted permission to file a thirty-one page memorandum in support of her motion for summary judgment. [*See* R. 12, 13.] Childress's list of arguments and accompanying analysis, however, do not begin until the bottom of page twenty-five. [*See* R. 11, Attach. 1.] The first twenty-five pages are taken up with a detailed summary of the medical and other evidence contained in the administrative record, unaccompanied by argument and analysis. [*See id.*] Thus, although Childress's counsel may have complied technically with the requirements of the Standing Scheduling Order, he appears to have missed their rationale. In the future, after providing the Court with a *brief* summary of the case, counsel should state his arguments and point the Court to evidence in the record that supports those arguments. In other words, counsel should not expect the Court to comb through his summary of the record to find evidence that may support his claims. If counsel still finds that he needs an extension of page limits, he may file an appropriate motion with the Court.

## II.

Childress filed an application for a period of disability and disability insurance benefits on November 5, 2003, based upon a protective filing dated September 12, 2003. [Transcript ("Tr.") 67-69; *see* Tr. 16.] She alleges disability beginning on January 19, 2000. [Tr. 67.] Childress's application was denied initially and upon reconsideration. [Tr. 30-37.] At Childress's request, an administrative hearing was conducted before Administrative Law Judge Deborah Smith ("ALJ"). [Tr. 38; *see* Tr. 449.] Judge Smith entered a decision denying Childress benefits on June 15, 2006. [Tr. 13-23.] Through counsel, Childress requested review

by the Appeals Council, and the Appeals Council affirmed the ALJ's decision. [Tr. 6-8.] Next, Childress appealed to the United States District Court for the Eastern District of Kentucky at Covington. [Tr. 520-21.] Upon the Commissioner's motion for remand and entry of judgment, Judge Danny C. Reeves entered an order and judgment remanding the case for further proceedings. [Tr. 523-25.] Specifically, Judge Reeves agreed with the Commissioner that remand was necessary to allow the ALJ to determine whether Childress can perform her past relevant work based on a hypothetical question to a vocational expert that included *all* of Childress's limitations. [*Id.*] If not, the ALJ was instructed to determine whether other jobs exist in the economy that Childress is capable of performing. [*Id.*]

On remand, Judge Smith conducted another hearing. [Tr. 805-825.] During the hearing, which took place on July 23, 2009, the ALJ heard testimony from Childress and vocational expert George Edward Parsons ("VE"). [*Id.*] Childress was represented by attorney Curtis Hatfield. [*Id.*] Childress, who was fifty-three (53) years old at the time of the hearing, has her general equivalency diploma, and her past relevant work includes experience as a file clerk and tax clerk. [Tr. 468, 469-71.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Childress had not engaged in substantial gainful activity during the period from January 19, 2000, the alleged onset date of disability, and December 31, 2005, the date when she last met the insured status requirements of the Social Security Act. [Tr. 513.] At Step 2, the ALJ found that Childress has the following severe impairments: obesity, headaches, arthritis of the knees, chronic obstructive pulmonary disease, depression, and anxiety. [Tr. 514.] At Step 3, the ALJ found that Childress does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. [Tr. 514.] At Step 4, the ALJ determined that Childress had the residual functional capacity to perform light work with certain limitations. [Tr. 514.] Specifically, she found that Childress had the RFC on and prior to

---

> the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

December 31, 2005,

> to perform light work as defined in 20 CFR 404.1567(b) except that she could only stand and walk for two hours at a time and sit for two hours at a time, and could alternate between those positions for the full course of an eight-hour day. The claimant was precluded from any postural activity, had limited ability to push and pull, and had to avoid work environments involving heights, moving machinery, temperature extremes, and irritating dusts and fumes. The claimant was able to understand and carry out detailed instructions for two hour intervals, to relate adequately in nonpublic settings, and to tolerate the changes and pressures of a routine setting.

[Tr. 514.] The ALJ then found that through the date last insured, Childress was capable of performing her past relevant work as a file clerk and tax clerk. [Tr. 516.] Accordingly, on August 18, 2009, the ALJ issued a second unfavorable decision, finding that Childress was not disabled within the meaning of the Social Security Act at any time from her alleged onset date through the date last insured. [Tr. 516.] Childress now seeks judicial review of that decision in this Court. The parties have filed cross motions for summary judgment [*see* R. 11, 14], which are now ripe for the Court's review.

### III.

### A.

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without

interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). Courts, however, are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

**B.**

Childress raises several arguments on appeal to this Court. First, she argues that the ALJ erred in determining her RFC. Upon review of Childress's motion for summary judgment and supporting memorandum, however, it appears that this argument is really subsumed by Childress's second and third listed arguments. In her second argument, Childress contends that the ALJ erred by discrediting the opinions of her treating physicians Drs. Lira and Baluyot. Third, Childress argues that the ALJ erred by failing to include in her hypothetical question to the VE any limitations related to her obesity and her "poor judgment" assessed by Drs. Rogers and Baluyot. Fourth and finally, Childress argues that the ALJ erred in failing to give credibility to Childress's testimony regarding her migraine headaches "even though the record is replete with

6

this diagnosis." [R. 11, Attach. 1 at 26.]

Childress's arguments can be classified into two categories: arguments related to her physical limitations and arguments related to her mental limitations. The Court will address her arguments related to her physical limitations first.

**1.**

Childress claims that the ALJ erred by discrediting the opinions of Dr. Lira, one of her treating physicians. Dr. Lira completed an assessment of Childress's physical limitations in November of 2005. [Tr. 308-310.] In this assessment, Dr. Lira provided her opinion that Childress could frequently lift and carry zero pounds and occasionally lift and carry twenty pounds; could stand and walk for a total of two hours during an eight-hour work day; could sit for a total of two hours during an eight-hour work day; could never climb, balance, stoop, crouch, kneel or crawl; was limited in her ability to push and pull; and was limited in her ability to work in environments involving heights, moving machinery, chemicals, temperature extremes, dust, noise, fumes, humidity, and vibration. [*Id.*] Then, in July of 2009, Dr. Lira gave her opinion that Childress "is unable to work and is totally and permanently disabled" due to her listed medical conditions. [Tr. 804.]

The Regulations provide that it is the Commissioner's responsibility to make the determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e)(1). A medical source's opinion that a claimant is "disabled" or "unable to work" is not considered a medical opinion, but is instead considered an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case, or "that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). Accordingly,

7

the ALJ properly discredited Dr. Lira's 2009 statement that Childress is disabled. Further, as noted by the ALJ, there would be no reason to apply that statement to the time on or before December 31, 2005, the date when Childress last met the insured status requirements of the Social Security Act. [Tr. 515.]

With respect to Dr. Lira's 2005 physical assessment, the Regulations provide a framework for the evaluation of opinion evidence. If a treating source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record, then it will be given controlling weight. 20 C.F.R. § 404.1527(d)(2). When a treating source opinion is not given controlling weight, the ALJ must decide the weight to give the opinion based on a number of factors, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability, the opinion's consistency with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. 416.927(d)(2)(i)-(ii), d(3)-d(5). Under the Regulations, an ALJ must always give "good reasons" for the weight he or she decided to give to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ did not give controlling weight to the physical assessment provided by Dr. Lira. [*See* Tr. 21.[2]] The ALJ explained that "the only support given for Dr. Lira's residual functional capacity assessment are her diagnoses without anything more. No symptoms are mentioned, nor did she cite objective tests, findings on physical examination, or a treatment

---

[2]In the second decision issued by the ALJ, she incorporated by reference the medical summary and analysis from her first decision as if fully restated therein. [Tr. 511.]

history that would warrant the limitations listed on her assessment form." [*Id.*] Thus, the ALJ decided to give Dr. Lira's assessment "a limited amount of weight because of its lack of objective support." [*Id.*] Ultimately, however, the ALJ's physical RFC assessment for Childress was largely consistent with Dr. Lira's assessment. As noted by Childress [R. 11, Attach. 1 at 30], the main difference was that while Dr. Lira stated that Childress could sit for two hours and stand and walk for two hours for a total of four hours during a typical day, the ALJ found that Childress could alternate between those positions for the full course of an eight-hour work day. The ALJ explained that "the record as a whole provides no basis for finding that the claimant cannot work within the functional limitations described by Dr. Lira for a full eight hours per day." [Tr. 21.] Thus, the ALJ fully complied with the applicable Regulations by providing good reasons for the weight he gave to Dr. Lira's opinions. Upon review of the record, the ALJ's decision with respect to Dr. Lira's opinions is supported by substantial evidence.

Childress also claims that the ALJ erred by failing to include any limitations related to her obesity in the hypothetical question to the VE. But the ALJ did find that Childress was precluded from any postural activity, which includes climbing, balancing, stooping, crouching, kneeling, and crawling, all of which could relate to Childress's obesity, as well as her arthritis. *See* SSR 02-1P, 2000 WL 628049, at *6 (Sept. 12, 2002). Further, although the VE testified in response to a question from Childress's attorney that obesity "could" affect an individual's ability to move from a sitting to a standing position, Childress has pointed the Court to no medical evidence in the record placing any further limitations on Childress's activities based on her obesity. Accordingly, the Court finds no error in the ALJ's hypothetical question to the VE with respect to physical limitations that may relate to Childress's obesity.

Further, Childress claims that the ALJ erred by failing to give credibility to her testimony regarding her migraine headaches. In the course of a disability determination, an ALJ is required to consider subjective allegations of pain, symptoms, and limitations caused by a claimant's impairment. 20 C.F.R. § 416.929(a). However, an "individual's statements as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. § 423(d)(5)(A). Rather, there must be medical evidence showing the existence of a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged," and which, when considered with all the other evidence, "would lead to a conclusion that the individual is under a disability." *Id. See also* 20 C.F.R. § 404.1529.

The Regulations prescribe a two-step process for assessing a claimant's subjective allegations of pain and other symptoms. First, the ALJ must determine if the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms. 20 C.F.R. § 404.1529(c)(1). Second, the ALJ must evaluate the intensity and persistence of those symptoms in order to determine how those symptoms limit the claimant's capacity for work.[3] *Id.*

Additionally, "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). Social Security

---

[3]In *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), the Sixth Circuit articulated the standard for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Ruling 96-7p, however, makes it clear that an "[a]ssessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all the evidence in the case record." SSR No. 96-7p, 1996 WL 374186, at *5 (Soc. Sec. Admin. 1996). The Social Security Ruling also provides that it is not sufficient for the ALJ "to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* at 4. Rather, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* In the words of the Sixth Circuit, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531 (citing *Beavers v. Sec. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978). Still, "[s]ince the ALJ had the opportunity to observe the demeanor of the appellant, his conclusions with respect to credibility 'should not be discarded lightly.'" *Houston v. Sec'y of Heath & Human Servs.*, 909 F.2d 365, 367 (6th Cir. 1984) (citing *Beavers*, 577 F.2d at 387).

Here, the ALJ clearly credited some of Childress's testimony regarding her migraines, as well as the medical evidence, as he listed "headaches" as one of her severe impairments. [*See* Tr. 514.] However, the ALJ found Childress's testimony regarding her headaches, such as her testimony that she experiences two to three headaches per week of such severity that she has to lie down, not entirely credible. [R. 20] As noted by the ALJ, the medical record does not document headaches of the frequency and severity alleged by Childress. [R. 20.] For example,

11

Dr. Lira does not attribute any of Childress's physical limitations to her migraine headaches [*see* Tr. 308-310], nor does she list migraines or headaches as one of Childress's medical conditions supporting her opinion that Childress is disabled [*see* Tr. 804]. Moreover, Childress testified that she spent a couple of months babysitting her grandchildren twice a week [Tr. 482], further supporting the ALJ's finding that her headaches were neither as frequent nor as severe as she claimed. Therefore, the ALJ's determination that Childress's testimony regarding her migraines was not entirely credible is supported by substantial evidence.

**2.**

With respect to her mental limitations, Childress argues that the ALJ erred by discrediting the opinions of her treating psychiatrist, Dr. Baluyot. Dr. Baluyot completed a medical assessment of Childress's mental ability to do work-related activities in February of 2006. [Tr. 382-84.] In her assessment, Dr. Baluyot indicated that she believes Childress has a "good" ability to follow work rules, a "fair" ability to relate to co-workers, deal with the public, interact with supervisors, function independently, and maintain attention/concentration, and a "poor" ability to use judgment and deal with work stresses. [Tr. 382.] According to Dr. Baluyot, Childress "states that she is unable to do work of any kind, even housework because she gets very tired and gets a migraine. Her depression is exacerbated by physical problems and it becomes a vicious cycle." [*Id.*] Dr. Baluyot also indicates that it is her opinion that Childress has a fair ability to understand, remember, and carry out detailed job instructions. [Tr. 383.]

At a deposition taken in July of 2009 after the ALJ's first decision denying benefits had issued, Dr. Baluyot testified that when she stated that Childress has a "fair" ability to do certain activities, she meant that Childress is "able to do some jobs, but she has to stop whenever she

12

feels she needs it." [Tr. 792.]  Specifically, she opined that Childress would need to take three or four ten- to fifteen-minute breaks during a typical workday.  [*Id.*]  Dr. Baluyot also testified that she does not believe Childress could sustain working an eight-hour workday five days a week at any job in the economy due to depression and anxiety.  [Tr. 800-801.]

The ALJ did not give the opinions of Dr. Baluyot controlling weight.  Thus, as stated previously, the ALJ needed to give "good reasons" for the weight she decided to give the opinions.  20 C.F.R. § 404.1527(d)(2).  Here, the ALJ did so.

In her first decision, the ALJ noted that she had given Dr. Baluyot's decision "little weight" because Dr. Baluyot's findings relied strongly upon Childress's subjective complaints and the ALJ found Childress not to be a credible witness, and because Dr. Baluyot's opinions were based in part upon physical problems for which she was not the treating physician.  [Tr. 20.] In her second decision, the ALJ stated that nothing in Dr. Baluyot's deposition testimony had been "given significant weight with respect to establishing a lower residual functional capacity level during the time period under consideration."  [Tr. 515.]  The ALJ explained that Dr. Baluyot testified that the medical assessment form she completed in February 2006 reflected her opinion regarding Childress's limitations at all times since she began treating her in 1995.  [*Id.*] The ALJ noted, however, that Childress's earnings record clearly shows that she worked at the substantial gainful activity level in both 1997 and 1998.  [*Id.*]  According to the ALJ, "[i]f the claimant had the limitations given by Dr. Baluyot, there is no way that she could have performed any work at that level."  [*Id.*]

After careful consideration of the record, the Court finds that the ALJ has given "good reasons" for her decision with respect to the weight to give Dr. Baluyot's opinions, and that

13

decision is supported by substantial evidence. The Court does not necessarily agree with some of the language used by the ALJ in her decision, such as the language suggesting that "in her deposition testimony Dr. Baluyot has chosen to act as the claimant's advocate rather than remaining an objectively testifying treating medical source." [Tr. 515]. Still, there is substantial evidence in the record from which to find that, while Childress certainly has some mental health issues and limitations, those do not rise to the level of a disability within the meaning of the Social Security Act. Even Dr. Baluyot stated in her deposition that Childress is able to do some jobs with opportunities for breaks. [*See* Tr. 792.]

Childress also argues that the ALJ erred by failing to include a limitation related to her "poor judgment," as assessed by Dr. Rogers and Dr. Baluyot, in the hypothetical question to the VE. In the May 2006 hearing before the ALJ, however, Dr. Rogers testified that Childress's judgment in a work situation would not necessarily be poor. [Tr. 493.] And, as stated above, the ALJ provided good reasons for discounting the opinions of Dr. Baluyot. Moreover, in the RFC, the ALJ limited Childress to working in "nonpublic" and "routine" settings. [Tr. 514.] Both these limitations could be viewed as responsive to an opinion that Childress has poor judgment. Thus, the ALJ did not err by failing to include a "poor judgment" limitation in her hypothetical question to the VE.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) The Plaintiff's Motion for Summary Judgment [R. 11] is **DENIED**;

(2) The Defendant's Motion for Summary Judgment [R. 14] is **GRANTED**; and

14

(3) **JUDGMENT** will be entered contemporaneously herewith.

This the 25th day of March, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge